# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

KIRBY S. SHANKS,            )
                                )
              Plaintiff,      )
                                )    **CIVIL ACTION**
v.                            )
                                )    **No. 13-2642-JWL**
CAROLYN W. COLVIN,       )
Acting Commissioner of Social Security,   )
                                )
              Defendant.    )
_____ )

# MEMORANDUM AND ORDER

Plaintiff seeks review of a decision of the Commissioner of Social Security (hereinafter Commissioner) denying Social Security Disability (SSD)[1] benefits under sections 216(i) and 223 of the Social Security Act.  42 U.S.C. §§ 416(i) and 423 (hereinafter the Act).  Finding no error, the court ORDERS that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the decision.

## I.    Background

_____

[1]Plaintiff asserts that this is also a proceeding under Title XVI of the Social Security Act.  (Pl. Br. 1).  There is record evidence that Plaintiff may have also applied for Supplemental Security Income under Title XVI (R. 183-205), but the ALJ's decision applies only to Plaintiff's Title II application protectively filed on August 5, 2011.  (R. 10, 22) see also, (R. 172-82).  Because Plaintiff does not allege error in the ALJ's failure to include consideration of a Title XVI application, the court does not consider if it was error for the ALJ to decide this case as it relates only to Title II.

Moreover, the ALJ's decision that Plaintiff is not disabled would apply equally to disability under Title XVI, and that decision is affirmed.

Plaintiff applied for SSD benefits, alleging disability beginning August 1, 2010. (R. 10, 176).  Plaintiff exhausted proceedings before the Commissioner, and now seeks judicial review of the final decision denying benefits.  He alleges the residual functional capacity (RFC) assessment in the decision at issue is not based upon substantial record evidence because the Administrative Law Judge (ALJ) failed to properly consider the medical opinions and "failed to provide a narrative bridge linking the medical evidence with the [RFC] limitations," and because the RFC does not reflect the record evidence.

The court's review is guided by the Act.  Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009).  Section 405(g) of the Act provides that in judicial review "[t]he findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive."  42 U.S.C. § 405(g).  The court must determine whether the ALJ's factual findings are supported by substantial evidence in the record and whether he applied the correct legal standard.  Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007); accord, White v. Barnhart, 287 F.3d 903, 905 (10th Cir. 2001).  Substantial evidence is more than a scintilla, but it is less than a preponderance; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401 (1971); see also, Wall, 561 F.3d at 1052; Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir. 1988).

The court may "neither reweigh the evidence nor substitute [its] judgment for that of the agency."  Bowman v. Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting Casias v. Sec'y of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991)); accord,

2

Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005).  Nonetheless, the determination whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it constitutes mere conclusion.  Gossett, 862 F.2d at 804-05; Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).

The Commissioner uses the familiar five-step sequential process to evaluate a claim for disability.  20 C.F.R. §§ 404.1520, 416.920 (2013); Wilson v. Astrue, 602 F.3d 1136, 1139 (10th Cir. 2010) (citing Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988)).  "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary."  Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084).  In the first three steps, the Commissioner determines whether claimant has engaged in substantial gainful activity since the alleged onset, whether he has a severe impairment(s), and whether the severity of his impairment(s) meets or equals the severity of any impairment in the Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P, App. 1).  Williams, 844 F.2d at 750-51.  After evaluating step three, the Commissioner assesses claimant's RFC.  20 C.F.R. § 404.1520(e).  This assessment is used at both step four and step five of the sequential evaluation process.  Id.

The Commissioner next evaluates steps four and five of the sequential process-- determining at step four whether, in light of the RFC assessed, claimant can perform his past relevant work; and at step five whether, when also considering the vocational factors of age, education, and work experience, claimant is able to perform other work in the

economy.  Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084).  In steps one

through four the burden is on Plaintiff to prove a disability that prevents performance of

past relevant work.  Blea v. Barnhart, 466 F.3d 903, 907 (10th Cir. 2006); accord,

Dikeman v. Halter, 245 F.3d 1182, 1184 (10th Cir. 2001); Williams, 844 F.2d at 751 n.2.

At step five, the burden shifts to the Commissioner to show that there are jobs in the

economy which are within the RFC assessed.  Id.; Haddock v. Apfel, 196 F.3d 1084,

1088 (10th Cir. 1999).

The court finds no error in the decision at issue.  It discusses each of the issues

raised, in the order presented in Plaintiff's Brief.

## II.      Evaluation of the Medical Opinions

Plaintiff claims the ALJ erred in evaluating the medical opinions.  He points out

that the ALJ gave "partial weight" to most of the medical opinions and thereby argues

that the ALJ erroneously gave the same weight to the opinions of the treating physicians

as he did to the non-examining medical consultants.  He argues that the ALJ did not

explain which opinion he gave controlling weight and "seemed to pick and choose what

limitations he wanted from each opinion without addressing the inconsistencies in the

opinions."  (Pl. Br. 19).  He argues that the ALJ distinguished all of the medical opinions

and produced his own RFC assessment, and did not explain where in the medical record

or opinion evidence he got the RFC limitations which he assessed.

The Commissioner argues that the ALJ properly considered the medical opinions--

that he "performed a thoughtful analysis of each opinion and adopted portions of each

4

opinion which were supported by the record as a whole." (Comm'r Br. 4). She then summarizes the ALJ's evaluation of each opinion and explains the record evidence which in her view supports the ALJ's evaluation. Id. at 4-6.

### A.        Standard for Evaluating Medical Source Opinions

"Medical opinions are statements from physicians and psychologists or other acceptable medical sources[2] that reflect judgments about the nature and severity of [a claimant's] impairment(s) including [claimant's] symptoms, diagnosis and prognosis." 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2). Such opinions may not be ignored and, unless a treating source opinion is given controlling weight, all medical opinions will be evaluated by the Commissioner in accordance with factors contained in the regulations. Id. §§ 404.1527(c), 416.927(c) (effective February 23, 2012); Social Security Ruling (SSR) 96-5p, West's Soc. Sec. Reporting Serv., Rulings 123-24 (Supp. 2014). A physician or psychologist who has treated a patient frequently over an extended period of time (a treating source) is expected to have greater insight into the patient's medical condition, and his opinion is generally entitled to "particular weight." Doyal v. Barnhart,

---

[2]The regulations define three types of "acceptable medical sources:"

"Treating source:" an "acceptable medical source" who has provided the claimant with medical treatment or evaluation in an ongoing treatment relationship. 20 C.F.R. §§ 404.1502, 416.902.
"Nontreating source:" an "acceptable medical source" who has examined the claimant, but never had a treatment relationship. Id.
"Nonexamining source:" an "acceptable medical source" who has not examined the claimant, but provides a medical opinion. Id.

331 F.3d 758, 762 (10th Cir. 2003). But, "the opinion of an examining physician [(a nontreating source)] who only saw the claimant once is not entitled to the sort of deferential treatment accorded to a treating physician's opinion." Id. at 763 (citing Reid v. Chater, 71 F.3d 372, 374 (10th Cir. 1995)). However, opinions of nontreating sources are generally given more weight than the opinions of nonexamining sources who have merely reviewed the medical record. Robinson v. Barnhart, 366 F.3d 1078, 1084 (10th Cir. 2004); Talbot v. Heckler, 814 F.2d 1456, 1463 (10th Cir. 1987) (citing Broadbent v. Harris, 698 F.2d 407, 412 (10th Cir. 1983), Whitney v. Schweiker, 695 F.2d 784, 789 (7th Cir. 1982), and Wier ex rel. Wier v. Heckler, 734 F.2d 955, 963 (3d Cir. 1984)).

"If [the Social Security Administration] find[s] that a treating source's opinion on the issue(s) of the nature and severity of [the claimant's] impairment(s) [(1)] is well-supported by medically acceptable clinical and laboratory diagnostic techniques and [(2)] is not inconsistent with the other substantial evidence in [claimant's] case record, [the agency] will give it controlling weight." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); see also, SSR 96-2p, West's Soc. Sec. Reporting Serv., Rulings 111-15 (Supp. 2014) ("Giving Controlling Weight to Treating Source Medical Opinions").

If the treating source opinion is not given controlling weight, the inquiry does not end. Watkins v. Barnhart, 350 F.3d 1297, 1300 (10th Cir. 2003). Such an opinion is "still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527." Id. Those factors are: (1) length of treatment relationship and frequency of examination; (2) the nature and extent of the treatment relationship,

6

including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion. Id. at 1301; 20 C.F.R. § 404.1527(c)(2-6); see also Drapeau v. Massanari, 255 F.3d 1211, 1213 (10th Cir. 2001). The ALJ's findings must be "sufficiently specific to make clear to any subsequent reviewers the weight he gave to the treating source's medical opinion and the reason for that weight." Krauser v. Astrue, 638 F.3d 1324, 1331 (10th Cir. 2011) (citing Watkins, 350 F.3d at 1300) (quotation omitted). A factor-by-factor analysis of a medical opinion is not required. Oldham v. Astrue, 509 F.3d 1254, 1258 (10th Cir. 2007).

### B.   The ALJ's Evaluation

When evaluating the severity of Plaintiff's mental impairments at step three of the sequential process, the ALJ noted that he gave "little weight" to the opinions of the state agency non-examining consultant psychologists, Dr. Stacy and Dr. Schulman, who had opined that Plaintiff's mental impairments were not medically determinable or not severe at the initial and reconsideration level, respectively. (R. 15) (citing Exs. 9F, 14F (R. 669-80, 709)). He explained the bases for this conclusion were that the psychologists had not examined Plaintiff and were not able to review all of the medical evidence, and that Dr. Bean examined Plaintiff and diagnosed depressive disorder, establishing that Plaintiff in fact had a medically determinable mental impairment. Id.

7

Between his step three and step four analyses. when explaining his RFC assessment, the ALJ summarized the record evidence, the medical treatment, the medical records, and the examination reports contained in the record evidence, summarized the opinion evidence and explained the weight accorded to each opinion including the opinions of the lay witnesses and of the remaining medical sources other than Dr. Stacy and Dr. Schulman, and explained his analysis of the credibility of Plaintiff's allegations of symptoms resulting from his impairments.  (R. 16-20).  It is this evaluation of the medical opinions of which plaintiff complains, because therein the ALJ accorded "partial weight" to all of the medical opinions other than the opinions of Drs. Stacy and Schulman.  This includes the treating source opinions of Drs. Jones and Wheeler, who treated Plaintiff after the workplace fall for which he received worker's compensation benefits; the non-treating source opinions of Drs. Noland and Bean, who performed and provided reports of a physical examination and a mental examination, respectively, at the request of the Social Security Administration; and the non-examining source opinion of Dr. Ditmore, a state agency consultant who reviewed the record evidence at the initial level of review and provided a Physical RFC Assessment form based on that review.  (R. 18-19).

### C.    Analysis

The court notes that the ALJ's summary and evaluation of the record evidence, including the medical records and reports is unusually thorough and detailed.  (R. 16-19).  Although the ALJ assigned identical weight to medical opinions from each of the three

levels of acceptable medical sources, he explained the bases for his determination, the record evidence supports those bases, and the other medical opinions do not preclude the ALJ's conclusions.

As Plaintiff's Brief implies, treating source opinions are generally entitled to the greatest weight, non-treating source opinions are generally entitled to lesser weight, and non-examining source opinions are generally entitled to the least weight. Robinson, 366 F.3d at 1084; 20 C.F.R. § 404.1527(c) (2012). However, when a treating source opinion is not accorded controlling weight, all medical opinions (including the treating sources' opinions) will be weighed in accordance with the regulatory factors, and the Commissioner will explain the reasons for the weight accorded. 20 C.F.R. § 404.1527(c) (2012). That is what the ALJ has done in this case.

Plaintiff's argument that the ALJ did not explain what opinion he gave controlling weight is without merit--he gave no opinion controlling weight. Only a treating source opinion might be accorded controlling weight, and both treating physicians who offered an opinion in this case released Plaintiff to return to work without restrictions. (R. 591) (Dr. Jones - "RTW [(return to work)] without restrictions"); (R. 690) (Dr. Wheeler - "no formal work restrictions can be identified for his spinal complaints with subjective symptoms outweighing objective findings, and with invalid FCE [(functional capacity evaluation)] results although with still the ability to meet his job demands"). Clearly, the ALJ found these opinions unworthy of controlling weight. He determined that Plaintiff

cannot perform past relevant work, he assessed significant limitations, and he restricted Plaintiff to a limited range of light work.  The evidence supports that finding.

SSR 96-2p, cited by the court in Watkins, explains that the term "substantial evidence" as used in determining whether a treating source opinion is worthy of "controlling weight" is given the same meaning as determined by the Court in Perales, 402 U.S. 389.  SSR 96-2, West's Soc. Sec. Reporting Serv., Rulings 113 (Supp. 2014). As the Ruling explains, evidence is "substantial evidence" precluding the award of "controlling weight," if it is "such relevant evidence as a reasonable mind would accept as adequate to support a conclusion that is contrary to the conclusion expressed in the medical opinion."  Id.  Contrary to Drs. Jones's and Wheeler's opinions, Dr. Noland opined that Plaintiff is limited in his ability to lift, to carry, or to handle, and Dr. Ditmore opined that Plaintiff is limited to medium level work.  (R. 682, 707).  As medical doctors, who formed their opinions after examining Plaintiff or after reviewing the record evidence, respectively, their opinions are such relevant evidence as a reasonable mind might accept to reach a conclusion contrary to Dr. Jones's and Dr. Wheeler's conclusion that Plaintiff could work without restrictions.  There is no error in the ALJ's determination not to accord controlling weight to the treating source opinions of Dr. Jones or Dr. Wheeler.

The essence of Plaintiff's allegation of error in weighing the medical opinions is that the ALJ seemed to pick and choose what limitations he wanted from each opinion, that he distinguished all of the medical opinions and produced his own RFC assessment,

10

and that he did not adopt any of the opinions in total and did not explain where in the medical record or opinion evidence he got the RFC limitations which he assessed. Plaintiff's argument misunderstands the ALJ's duty to assess Plaintiff's RFC. The "error" Plaintiff asserts is precisely the duty of the ALJ in this regard.

RFC is an assessment of the most a claimant can do on a regular and continuing basis despite his limitations. 20 C.F.R. §§ 404.1545(a), 416.945(a); see also, White, 287 F.3d at 906 n.2. It is an administrative assessment, based on all the evidence, of how a claimant's impairments and related symptoms affect his ability to perform work-related activities. Id.; see also SSR 96-5p, West's Soc. Sec. Reporting Serv., Rulings 126 (Supp. 2014) ("The term 'residual functional capacity assessment' describes an adjudicator's findings about the ability of an individual to perform work-related activities."); SSR 96-8p, West's Soc. Sec. Reporting Serv., 144 (Supp. 2014) ("RFC is an administrative assessment of the extent to which an individual's medically determinable impairment(s) . . . may cause physical or mental limitations or restrictions that may affect his or her capacity to do work-related physical and mental activities."). The Commissioner has provided eleven examples of the types of evidence to be considered in making an RFC assessment, including: medical history, medical signs and laboratory findings, effects of treatment, reports of daily activities, lay evidence, recorded observations, medical source statements, effects of symptoms, attempts to work, need for a structured living environment, and work evaluations. SSR 96-8p, West's Soc. Sec. Reporting Serv., Rulings 147 (Supp. 2014).

11

Although an ALJ is not an acceptable medical source qualified to render a medical opinion, "the ALJ, not a physician, is charged with determining a claimant's RFC from the medical record." Howard v. Barnhart, 379 F.3d 945, 949 (10th Cir. 2004). "And the ALJ's RFC assessment is an administrative, rather than a medical determination." McDonald v. Astrue, 492 F. App'x 875, 885 (10th Cir. 2012) (citing SSR 96-05p, 1996 WL 374183, at *5 (July 1996)). Because an RFC assessment is made based on "all of the evidence in the record, not only the medical evidence, [it is] well within the province of the ALJ." Dixon v. Apfel, No. 98-5167, 1999 WL 651389, at **2 (10th Cir. Aug. 26, 1999); 20 C.F.R. §§ 404.1545(a), 416.945(a). Moreover, the final responsibility for determining RFC rests with the Commissioner, who has delegated that responsibility to the ALJ in a case such as this. 20 C.F.R. §§ 404.1527(e)(2), 404.1546.

"[T]here is no requirement in the regulations for a direct correspondence between an RFC finding and a specific medical opinion." Chapo v. Astrue, 682 F.3d 1285, 1288 (10th Cir. 2012) (citing Howard v. Barnhart, 379 F.3d at 949; Wall, 561 F.3d at 1068-69). An RFC assessment does not require citation to a medical opinion, or even to medical evidence in the administrative record for each RFC limitation assessed. Castillo v. Astrue, No. 10-1052, 2011 WL 13627, *11 (D. Kan. Jan. 4, 2011). There is no need in this case, or in any other, for the Commissioner to base the limitations in his RFC assessment upon specific statements in medical evidence or opinions in the record.

Plaintiff's argument that the ALJ may not improperly "'pick and choose' through an opinion, taking only those parts that are favorable to a finding of nondisability" (Pl. Br.

20), while true in so far as it goes, ignores the entirety of the principle upon which it is based. Plaintiff cites to a line of cases which finds the basis of that principle in the Seventh Circuit case of Switzer v. Heckler, 742 F.2d 382, 385-386 (7th Cir. 1984). See, Robinson, 366 F.3d at 1083 (citing Switzer, 742 F.2d at 385-86); Haga v. Astrue, 482 F.3d 1205, 1208 (10th Cir. 2007) (citing Robinson, 366 F.3d at 1083; and Hamlin v. Barnhart, 365 F.3d 1208, 1219 (10th Cir. 2004) (citing Switzer, 742 F.2d at 385-86)). And, the Switzer court specifically stated the principle that it is improper to use only portions of a doctor's report which are favorable to a finding of nondisability, "while ignoring other parts." Switzer, 742 F.2d at 385-86. Moreover, there is another line of cases decided by the Tenth Circuit which relies upon the same principle from Switzer, but reveals both aspects of that court's holding: An ALJ may not "pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence." Keyes-Zachary v. Astrue, 695 F.3d 1156, 1166 (10th Cir. 2012) (citing Hardman v. Barnhart, 362 F.3d 676, 681 (10th Cir. 2004)); Carpenter v. Astrue, 537 F.3d 1264, 1265 (10th Cir. 2008) (citing Hardman, 362 F.3d at 681); and Hardman, 362 F.3d at 681 (citing Switzer, 742 F.2d at 385-86).

The ALJ did not "pick and choose" portions of the opinions favorable to his position while ignoring other portions of the opinions. The court's review of the decision reveals that the ALJ provided a fair summary of the record evidence, including Plaintiff's allegations, the medical evidence, and the opinion evidence. The court sees no significant, material, record evidence which was ignored by the ALJ. Here, Plaintiff does

13

not argue that the ALJ ignored portions of the doctors' opinions, and he does not point to evidence or to portions of the doctors' opinions which were ignored.  To be sure, the ALJ did not accept the entirety of any physician's opinion.  But, he did not ignore any portion of those opinions either.  Rather, he evaluated each physician's opinions based upon all of the record evidence and stated his reasons for accepting certain of those opinions and rejecting others.  That is his duty.  Plaintiff does not point to any of the ALJ's reasons which is erroneous or is not supported by the record evidence.

Finally, the decision explains how the ALJ assessed Plaintiff's RFC limitations:

Considering that the claimant's imaging studies did not show extensive problems with his cervical or lumbar spine, but also considering that he continues to have some abnormalities on examination and he continues with some shoulder weakness, I find the claimant can only lift and carry up to twenty pounds occasionally and up to ten pounds frequently.  This is consistent with Dr. Noland's opinion that the claimant has some lifting and carrying limits and with Dr. Jones' opinion that the claimant is not able to do the heavy work he has done in the past.  I find that the claimant's lifting does not need to be further reduced because his daily activities are inconsistent with more severe lifting restrictions.  For example, his wife indicated the claimant helps clean, goes grocery shopping, sometimes takes care of the dogs and the fish tank, mows, bowls, fishes and plays with the grandchildren, among other things (Ex. 7E [(R. 308-15)]).  The claimant's bowling was also mentioned by one of the witnesses in the investigation report (Ex. 16F [(R. 734-44)]).[3]

---

[3]The record contains a "Summary Report of Investigation" completed by the Social Security Administration's Cooperative Disability Investigations Unit, in Kansas City.  (R. 734-44) (Ex. 16F).  At the hearing, Plaintiff's counsel objected to admission of the report of investigation, and the ALJ stated he would make a final ruling on admissibility after the hearing.  (R. 31).  In the hearing decision, the ALJ discussed the report, and overruled Plaintiff's objection.  (R. 10-11).  Plaintiff has not appealed that decision.

Considering that the MRI of the claimant's lumbar spine was normal and also considering that his examinations most often showed normal strength and range of motion in his legs and negative straight leg raise tests, I find the claimant can stand or walk for six hours and sit for six hours total in an eight-hour workday with normal breaks.

Because the claimant continues to have some problems with his right shoulder, including reduced range of motion and reduced strength, I find the claimant can only occasionally reach overhead or to the side with his right arm (Exs. 15F; 17F [(710-33, 745-56)]).  I do not adopt Dr. Jones' opinion as to the claimant's limitations before he reached maximum medical improvement that the claimant could do no repetitive lifting, pushing or pulling with his right arm because in his function report completed shortly after this time, the claimant indicated he bowls one time a week, which would involve repetitive lifting and swinging with his dominant right arm (Exs. 3E/5; 8F/16, 30 [(R. 282, 594, 608)]).

Additionally, because of his right shoulder problems, I find the claimant can never climb ladders, ropes or scaffolds.  As he had an altered gait at the consultative examination with Dr. Bean, I find the claimant can only occasionally climb ramps or stairs.  Because of his back, neck and shoulder pain, I find the claimant should only occasionally stoop, kneel, crouch, crawl, balance and bend as these activities could exacerbate his pain if done more frequently.

After examining the claimant, Dr. Bean opined the claimant's cognitive functioning was below average and opined the claimant would do better with simple tasks as complex tasks could be too challenging.  He also opined the claimant's ability to sustain focus, attention and concentration for an eight-hour workday might be limited (Ex. 12F/3-4 [(R. 702-03)]).  As explained above, I give only partial weight to Dr. Bean's opinion.  I disagree with Dr. Bean that the claimant might not be able to sustain focus, attention and concentration for an eight-hour day because one witness in the investigative report indicated that the claimant was able to work eight to ten hours per day for a week when digging a basement (Ex. 16F[(R. 734-44)]).  Additionally, the claimant's prior boss reported that he had spoken to the claimant several times and he did not appear to have any cognitive or memory problems (Ex. 16F [(R. 734-44)]).  However, I do agree with Dr. Bean's opinion that the claimant can do only simple tasks.  Therefore, considering the claimant's limited education, his depression and the

possible side effects from his pain medications, I find the claimant can only perform unskilled work.

(R. 19).

Plaintiff has shown no error in the ALJ's evaluation of the medical opinions.

### III.   Narrative Discussion

Plaintiff argues that an ALJ's "RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts and nonmedical evidence," and "must explain how any material inconsistencies or ambiguities in the evidence were considered and resolved." (Pl. Br. 21-22) (citing SSR 96-8p). He asserts that if the "ALJ does not link the RFC determination to specific evidence in the record, this constitutes reversible error." Id. at 21. Plaintiff argues that the ALJ in this case did not provide a narrative discussion linking his RFC determination to specific evidence in the record. He argues that since "the ALJ could not point to any specific medical evidence when finding the limitations in his RFC, we have to assume that the ALJ, who is not a medical expert, committed reversible error by improperly interjecting his own medical opinion concerning the seriousness of [Mr.] Shanks's impairments as a basis for concluding that [Mr. Shanks] was not disabled." Id. at 22 (citing Lund v. Weinberger, 520 F.2d 782 (8th Cir. 1975)).

The court's discussion above regarding the ALJ's duty with regard to assessing RFC goes most of the way to demonstrate the fallacy of Plaintiff's narrative discussion argument. Nonetheless, the court finds it necessary to clear up a few remaining points

16

before moving on to Plaintiff's final argument.  Plaintiff is correct in asserting that an RFC assessment must include a narrative discussion in accordance SSR 96-8p.  West's Soc. Sec. Reporting Serv., Rulings 149-50 (Supp. 2014).  However, there is no "narrative bridge" requirement as suggested in the initial paragraphs of the Argument section of Plaintiff's Brief.  Eastman v. Colvin, No. 13-2527-JWL, slip op. at 19-22, (D. Kan. Nov. 25, 2013) (Doc. 17).  As noted above, an ALJ is not required to link each RFC limitation to specific record evidence.  And, Plaintiff cites to no authority for his assertion that if the "ALJ does not link the RFC determination to specific evidence in the record, this constitutes reversible error."  (Pl. Br. 21).

What is required is that the ALJ provide a narrative discussion citing specific medical facts and nonmedical evidence to describe how the evidence supports each conclusion; discuss how the plaintiff is able to perform sustained work activities, and describe the maximum amount of each work activity the plaintiff can perform; provide an explanation how any ambiguities and material inconsistencies in the evidence were considered and resolved; include consideration of the credibility of plaintiff's allegations of symptoms and consideration of medical opinions regarding plaintiff's capabilities; and, if the ALJ's RFC assessment conflicts with a medical source opinion, explain why the opinion was not adopted.  SSR 96-8p, West's Soc. Sec. Reporting Serv., Rulings 149-50 (Supp. 2014).  That is precisely what the ALJ did in this case.  Plaintiff points to no record evidence which was ignored, and cites to no specific ambiguities or

inconsistencies in the evidence which were not considered and appropriately resolved as required by SSR 96-8p.  Plaintiff has shown no error in the ALJ's narrative discussion.

## IV.   Substantial Record Evidence Supports the RFC Assessment

Plaintiff's final argument is that the "RFC does not reflect the substantial evidence of record."  (Pl. Br. 19).  Specifically, he argues that "the substantial evidence of record suggests more severe limitations than those adopted by the ALJ."  Id. at 23.  In support of this assertion, Plaintiff points to his own testimony and allegations in the record evidence, and argues that the ALJ "failed to link any of [Mr.] Shanks [sic] testimony to the limitations in [the] RFC [assessed]."  Id. at 24.  He also argues that the ALJ "failed to consider [Mr.] Shanks's non-severe impairments of carpal tunnel syndrome, sleep problems, and his inability to read and write when [assess]ing the RFC."  Id.  The Commissioner argues that both the ALJ's credibility determination and his RFC assessment are supported by substantial record evidence.

Plaintiff's arguments fail.  The ALJ found Plaintiff's testimony "to be less than credible," and provided seven reasons in support of his finding.  (R. 20).  Plaintiff does not allege error in the credibility determination, and does not explain why his testimony should be accepted, he merely reiterates his allegations from the record evidence, asserts that his testimony suggests more severe limitations than assessed, and that the ALJ failed to link the testimony to the RFC limitations assessed.  As discussed above, the ALJ is not required to cite to record evidence for each RFC limitation assessed.  More importantly

here, Plaintiff has not shown that his testimony must be accepted or that the ALJ's credibility determination is error.

Plaintiff's argument that the ALJ failed to consider carpal tunnel syndrome, sleep problems, and an alleged inability to read and write is without merit.  The ALJ clearly considered each of these alleged impairments.  He found that Plaintiff has medically determinable impairments of carpal tunnel syndrome and sleep problems, but he found both of those impairments not severe.  Plaintiff does not argue error in this finding.  To the extent that Plaintiff is arguing that the ALJ should have assessed specific RFC limitations as a result of each of these impairments, he does not suggest limitations which were ignored, and does not point to record evidence requiring such limitations. Moreover, the ALJ noted that Dr. Noland found no objective signs of carpal tunnel, that Plaintiff had nearly full range of motion in both wrists, that Plaintiff performed personal care without problems, and performed significant daily activities requiring use of his hands.  (R. 13).  He also noted that Plaintiff had not sought further treatment for sleeping problems, he was not taking medications for the problem, and his daily activities are fairly active which is inconsistent with significant sleeping problems.  Id.

With regard to the alleged inability to read or write, the ALJ found that was not a medically determinable impairment, because the record does not document the alleged problem, because Plaintiff did not take special education classes and did not drop out of school until the ninth grade and most people can read and write by the ninth grade, and because Plaintiff was able to do substantial work in the past.  Id.  Therefore, the ALJ

found that Plaintiff "only has a limited education," and did not find that "he is unable to read and write."  (R. 14).

As discussed herein, Plaintiff has shown no error in the Commissioner's decision below.

**IT IS THEREFORE ORDERED** that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's decision.

Dated this 15th  day of January 2015, at Kansas City, Kansas.


s:/ John W. Lungstrum            
**John W. Lungstrum**
**United States District Judge**